842 P.2d 1344

**The STATE of Arizona, Appellee,**

v.

**Ramon Mayorga RODARTE, Appellant.**

**No. 2 CA–CR 90–0007.**

Court of Appeals of Arizona,
Division 2, Department B.

July 23, 1992.

Redesignated as Opinion Sept. 17, 1992.

Review Denied Jan. 12, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Linda L. Knowles, Phoenix, for appellee.

Susan A. Kettlewell, Pima County Public Defender by Frank P. Leto, Tucson, for appellant.

## OPINION

DRUKE, Presiding Judge.

The appellant Ramon Rodarte was tried by a jury on charges of unlawful sale of marijuana, a class 3 felony, unlawful sale of a narcotic drug, a class 2 felony, and unlawful transfer of a narcotic drug, a class 2 felony.

During jury selection, appellant, who is Hispanic, objected to the prosecutor's peremptory strikes of the only two Hispanic venire members, who will be referred to by their first names, Felipe and Michael, arguing that the strikes were racially motivated.[1] The court overruled the objection, finding the strikes were permissible.

At trial a Tucson police officer assigned to the Metropolitan Area Narcotic Tactical Interdiction Squad testified that on March 3, 1989, appellant sold him $20 (46 grams) of marijuana; on March 14, 1989, appellant

sold him $40 (226 milligrams) of cocaine; and on March 22, 1989, appellant gave him a small amount (98 milligrams) of cocaine as a sample for a transaction which was never completed.

At the end of the state's case, appellant moved for a directed verdict on all counts on the ground that the state failed to prove that "useable amounts" of narcotics were involved in the three charged transactions. The state argued that the sale of any amount of narcotics was prohibited under Arizona law and the state need not prove the amount "useable." The trial court denied appellant's motion.

The jury found appellant guilty on all counts and that the allegations of prior convictions were true. The trial court imposed presumptive, concurrent sentences for each count as follows: 11.25 years for unlawful sale of marijuana and 15.75 years for the counts of unlawful sale and unlawful transfer of a narcotic drug.

## DISCUSSION

■ We first address the issue of whether the counts of sale and transfer of cocaine require proof they involved a "useable amount." Our supreme court has consistently rejected any argument that a conviction for sale or transfer of narcotic drugs requires proof that the drug involved was of a sufficient quantity to be a "useable amount." The court first rejected this argument in *State v. Ballesteros,* 100 Ariz. 262, 413 P.2d 739 (1966), and the holding has been reaffirmed in subsequent cases. *State v. Espinosa,* 101 Ariz. 474, 476, 421 P.2d 322, 324 (1966); *State v. Ballinger,* 110 Ariz. 422, 425, 520 P.2d 294, 297 (1974). We are not at liberty to decide otherwise, *McKay v. Industrial Commission,* 103 Ariz. 191, 193, 438 P.2d 757, 759 (1968), and thus conclude that the trial court did not err in denying appellant's motion for a directed verdict and in instructing the jury that "useable amount" is not an element of the offense in question.

1. Venire members Armando Inclan and Theresa Vermentte, both of whom have Hispanic surnames, were also peremptorily struck by the prosecutor but were not considered by the parties below.

We now address the state's peremptory strikes of the Hispanic members of the jury panel. Appellant raises two separate issues:

(1) Did the strikes deny appellant his right to equal protection under the Fourteenth Amendment?

(2) Did the strikes deny appellant his right to an impartial jury pursuant to article II, § 24 of the Arizona Constitution?

## EQUAL PROTECTION

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment forbids a prosecutor from striking potential jurors solely on account of their race. The Supreme Court outlined a three-prong process for evaluating a claim that a prosecutor has peremptorily struck a potential juror in a manner violating the Equal Protection Clause: (1) The defendant must make a prima facie showing that the prosecutor has exercised peremptory strikes on the basis of race; (2) if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the prosecutor's stated reasons constitute a sufficiently neutral explanation or whether the defendant indeed has shown purposeful discrimination. *Id.* at 96–98, 106 S.Ct. at 1722–23.

■ In applying the three-step *Batson* analysis to the facts of this case, we find no error. First, the record reflects that the prosecutor waived appellant's initial burden and voluntarily offered his explanation for the peremptory challenges. Therefore, the preliminary issue of whether appellant has made a prima facie showing is moot. *Hernandez v. New York,* 500 U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). In applying the second prong of *Batson,* we look to whether the prosecutor offered race-neutral reasons for striking Felipe and Michael, thus satisfying the prosecutor's burden of articulating a race-neutral reason for the peremptory challenges. The prose-cutor's explanations consisted of the following:

With regards to [Felipe], the first thing I wrote down about him, and maybe this is unfair. Maybe it's not, but the *first* thing I wrote down, he looked like he was a little too close to the nar-cotics area himself, and the *second* thing I noticed was that he was extremely bored. He was looking around. He seemed disgusted being here. He did not seem to be able to make any kind of eye contact. The *third* note I had was that he had absolutely no ties or any responsibilities, that he had no job. He had no family. Not really tied to the community, therefore would not be a State's witness [sic].

(Emphasis added.) The prosecutor also added that Agent Williams "said ... the first thing he noticed about [Felipe] ... was that he looked like he might possibly be a doper."

As to his other peremptory strike, the prosecutor stated:

With regard to [Michael], a lot of the same thing. He looked to me again to be awfully close to the drug culture himself. Again, he had no responsibilities, no ties other than a job as a building mainte-nance person, and it was my feeling that his lack of responsibility and his appear-ance as being too close to the drug cul-ture would not make him a state-oriented juror, but would rather make him de-fense-oriented.

As before, the prosecutor added that "Agent Williams also indicated it looked like [Michael] was a little too close to the drug culture."

Defense counsel argued that the respons-es of the two Hispanic jurors did not sup-port the state's reasons for striking them, stating:

I would note that nothing that either juror said during the voir dire would support anything that the state has said that I recall.

In other words, they were specifically asked about their feelings about drug cases, about whether or not they could

sit fairly. They did not respond, as the court is well aware, as many jurors did, and many of them even attempted to respond to those questions, and I think basically the prosecutor is trying to cover up an ethnic strike by saying they look like dopers.

In response to the foregoing, the trial court responded as follows:

[The court]: Does anybody know how to spell "Saturday" in Spanish? Is it S–A–B–A–D–O?

[Defense counsel]: That's the spelling for Saturday in Spanish, your honor.

[A voice]: Your honor, I'm sorry, also the spelling for Saturday in Italian, too, your honor.

[The court]: Thank you. Based upon the record of the court, it's the finding of the court that the state's strikes were permissible.

Appellant contends that the reasons for striking the two venire members must be race-neutral and *objectively verifiable.* Appellant relies on *State v. Hernandez,* 170 Ariz. 301, 305, 823 P.2d 1309, 1313 (App.1991), *State v. Boston,* 170 Ariz. 315, 317, 823 P.2d 1323, 1325 (App.1991), *State v. Reyes,* 163 Ariz. 488, 490, 788 P.2d 1239, 1241 (App.1989), and *State v. Tubbs,* 155 Ariz. 533, 538, 747 P.2d 1232, 1237 (App. 1987) (Kleinschmidt, concurring). In addition, appellant asserts that the trial court should make specific findings reviewable by an appellate court, especially when the prosecutor's reasons are "elusive" or "intangible." *State v. Boston, supra; State v. Jackson,* 157 Ariz. 589, 760 P.2d 589 (App.1988).

Appellant argues that two of the reasons given for striking Felipe, that he looked like a doper and that he appeared "extremely bored" with a lack of eye contact, and one reason given for striking Michael, that he appeared too close to the drug culture, were elusive, intangible and not

verified by the trial court and therefore served as a pretext for discrimination. Appellant points out that the prosecutor never stated what objectively verifiable factors or even unverifiable hunches led to his conclusion that Felipe and Michael were "dopers." Moreover, appellant asserts that the trial court made no inquiry into this "trait" nor did the court corroborate the prosecutor's statements about Felipe's lack of eye contact or boredom. Appellant argues that elusive explanations involving this kind of group stereotype are improper when not verifiable or verified by the trial court because they can easily serve as a pretext for racial discrimination.

While it is true that Arizona courts have required objectively verifiable reasons to overcome a challenge to a peremptory strike and in some instances required a trial court to observe the conduct or verify the existence of circumstances which are given as racially-neutral reasons, these cases were all pre-*Hernandez v. New York, supra.* All *Hernandez v. New York* requires is that the explanation given by the prosecutor be based on something other than the race of the juror. The issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. We find nothing inherent in the prosecutor's explanation that demonstrates discriminatory intent; therefore, the reasons given were properly deemed race neutral.

■ The prosecutor also noted Felipe's lack of employment and Michael's job as a maintenance man, and both venire members' lack of ties to the community, in peremptorily challenging them. Appellant argues that the prosecutor did not strike certain other venire members who were not employed [2] or were employed in jobs comparable to Michael,[3] and that the prosecutor did not strike a certain other venire member who, like Felipe and Michael, was

---

**2.** Venire members Elmer Grosslin and Jane Ramandi were retired; Gary Hansen was unemployed (law student); Theresa Vermentte was also retired, but was struck by the prosecution.

**3.** Linda Maggio was a checker at Fry's; Theresa

unmarried.[4] Division One of this court has held:

> It is appropriate to consider a prospective juror's work history in exercising peremptory challenges. *United States v. Jackson,* 914 F.2d 1050, 1052–53 (8th Cir. 1990) (Prospective juror who was young, single, unemployed, and without stable employment history stricken); *Haynes v. State,* 103 Nev. 309, 316–17, 739 P.2d 497, 502 (1987) (Prospective juror with only two months' work experience stricken).
> The defendant argues that there were other persons on the venire with limited recent employment histories whom the prosecutor did not strike. The dynamics of the jury selection process make it difficult, if not impossible, on written appellate record to evaluate or compare the challenge of one prospective juror with the retention of another person who on paper appears to be substantially similar. *People v. Johnson,* 47 Cal.3d 1194, 1221, 255 Cal.Rptr. 569, 579, 767 P.2d 1047, 1057 (1989).... We agree with the trial court that consideration of [defendant's] work history was proper.

*State v. Hernandez,* 170 Ariz. at 305, 823 P.2d at 1313 (emphasis added). We believe it was proper for the prosecutor to consider Felipe's and Michael's work history and marital status in exercising peremptory challenges.

Additionally, appellant contends that lack of a well-paying job and lack of family are not related to the offenses in question, and may have a disparate impact on racial minorities and can easily serve as a pretext for racial discrimination, citing *Boston, supra,* 170 Ariz. at 316, 823 P.2d at 1324. A recent decision by this court has rejected the *Boston* relationship requirement on the grounds that it is inconsistent with the Supreme Court's decisions applying *Batson* and at variance with the direction recently taken by the United States Supreme Court in *Hernandez v. New York, supra. See State v. Medina,* 172 Ariz. 287, 836 P.2d 997 (Ct.App.1992).

Since we find the reasons given by the prosecutor are race neutral on their face, we next turn to the third prong of *Batson* to determine whether the trial court clearly erred in accepting the prosecutor's race-neutral reasons. Appellant argues that the application of the clear error standard is not appropriate in this case. He asserts that the United States Supreme Court based its reliance on the clear error standard mainly because a finding of discrimination will "largely turn on evaluation of credibility." *Hernandez v. New York,* 500 U.S. at ——, 111 S.Ct. at 1869. Moreover, appellant argues that a trial court's findings of fact are generally given great deference based, in part, on the nature and extent of the trial court's inquiry, *see State v. Boston,* 170 Ariz. at 316–17, 823 P.2d at 1324–25; *State v. Hernandez,* 170 Ariz. at 304, 823 P.2d at 1312; *State v. Reyes,* 163 Ariz. at 491, 788 P.2d at 1242, but that the Supreme Court has indicated that the standard of review is flexible and depends on the context and circumstances of a case. *Hernandez v. New York,* 500 U.S. at ——, 111 S.Ct. at 1869. Appellant argues that the application of the "clear error" standard is not appropriate because the inquiry of the trial judge was superficial and did not focus on the "credibility of the prosecutor or jurors but on the Spanish spelling of the word 'Saturday'." Appellant contends that the trial judge's inquiry was erroneous as a matter of law and the clear error standard is inapplicable.

We disagree. Nothing in *Batson* or any of the Supreme Court cases interpreting *Batson* require a trial court to make a threshold inquiry into the prosecutor's reasons before the clear error standard is applicable. All that is required of the trial court is that it make a determination of whether the defendant met the ultimate burden of proving purposeful discrimination. Therefore, the clear error standard is applicable in this case, and since we are not left with a definite and firm conviction that

---

Lazadi was a cashier.

4. Gary Hansen was unmarried. Theresa Vermentte was married, but was struck by the prosecutor.

a mistake has been made, we discern no clear error in the court's determination that the prosecutor did not discriminate on the basis of ethnicity. *Hernandez v. New York*, 500 U.S. at ——, 111 S.Ct. at 1871. Appellant's Fourteenth Amendment equal protection rights were not violated.

## IMPARTIAL JURY

■ Appellant also claims that his constitutional right to an impartial jury as protected by the Arizona Constitution was violated. Appellant relies on article II, § 24 of the Arizona Constitution for the proposition that "the state may not make *discriminatory* use of the peremptory challenge to exclude any substantial and identifiable class of citizens from the privilege and obligations of jury service." *State v. Superior Court (Gardner)*, 157 Ariz. 541, 546, 760 P.2d 541, 546 (1988), *cert. denied, Arizona v. Nastro*, —— U.S. ——, 111 S.Ct. 1638, 113 L.Ed.2d 733 (1991) (citations omitted) (emphasis in original). However, appellant's reliance on *Gardner* is misplaced. Our supreme court's decision in *Gardner* was based on the Sixth Amendment to the United States Constitution. Moreover, our supreme court indicated in *Gardner* that the United States Supreme Court might disagree with its view of the Sixth Amendment guaranty and interpret it more restrictively. Indeed, that occurred in *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990) wherein the Supreme Court held that the Sixth Amendment's fair cross-section requirement does not prevent either side from exercising its peremptory challenges in order to exclude cognizable racial or other groups from a jury which is finally empaneled as long as the venire itself is drawn from a fair cross-section of the community. 493 U.S. at 477, 110 S.Ct. at 806.

However, our supreme court did give guidance in the event that the United States Supreme Court disagreed with its interpretation of the Sixth Amendment, indicating that the jury trial guaranty contained in article II, § 24 of the Arizona Constitution would become determinative. *Gardner*, 157 Ariz. at 546 n. 4, 760 P.2d at

546 n. 4. However, the court explicitly did not decide whether article II, § 24 of the Arizona Constitution would be interpreted to forbid discrimination through the use of peremptory challenges. *Id.*

As instructed by *Gardner*, we look to article II, § 24 to determine if it offers greater protection than the Sixth Amendment to the United States Constitution. *See Feldman & Abney, The Double Security of Federalism: Protecting Individual Liberty Under the Arizona Constitution*, 20 Ariz.St.L.J. 115 (1988). Article II, § 24 and the Sixth Amendment are comprised of virtually identical language. Arizona courts have rejected a so-called lock-step approach requiring a court to unquestionably adopt federal construction of personal liberties and rights, and have declined to follow Supreme Court interpretations of provisions of the United States Constitution that are virtually identical to provisions of our state constitution. *See Deer Valley v. Superior Court*, 157 Ariz. 537, 760 P.2d 537 (1988); *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984).

However, we find no reason to extend our state's "impartial jury" protection beyond that provided by the Sixth Amendment clause. While the dissent in *Holland, supra,* is very persuasive, we believe that any extension of the Arizona Constitution beyond identical provisions in the United States Constitution should be left to the Arizona supreme court, *State v. Hanna*, 173 Ariz. 30, 839 P.2d 450 (App.1992); *State v. Calabrese*, 157 Ariz. 189, 191, 755 P.2d 1177, 1179 (App.1988), and hold that the impartial jury clause of the Arizona Constitution offers no greater protection than the impartial jury clause of the United States Constitution.

## CONCLUSION

The trial court did not err in instructing the jury that "useable amount" is not an element of the offense of sale of a narcotic drug or transfer of a narcotic drug. The prosecutor's reasons for striking the two veniremen in question were sufficiently race neutral and the trial court did not clearly err in accepting the reasons. We

have searched the record for fundamental error and have found none. Appellant's convictions and sentences are affirmed.

FERNANDEZ and HATHAWAY, JJ., concur.