911 P.2d 623

**The STATE of Arizona, Appellee,**

v.

**Jason Lee HARRIS, Appellant.**

**No. 2 CA–CR 95–0083.**

Court of Appeals of Arizona,
Division 2, Department B.

Oct. 31, 1995.

Review Denied Feb. 21, 1996.*

\* Feldman, C.J., and Zlaket, Vice C.J., of the Supreme Court, voted to grant the petition for review. Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Grant Woods, Attorney General by Paul J. McMurdie and Christopher E. Avery, Phoenix, for Appellee.

Susan A. Kettlewell, Pima County Public Defender by Frank P. Leto, Tucson, for Appellant.

## OPINION

DRUKE, Chief Judge.

■ Appellant was convicted of two counts of burglary and one count of theft, and was placed on intensive probation for four years. In the sole issue raised on appeal, he contends that he was denied the equal protection of the law by the prosecutor's use of peremptory challenges to strike two Hispanic jurors. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court concluded that the prosecutor's strikes were not race related. We will not reverse that finding of fact unless it is clearly erroneous. *State v. Cruz,* 175 Ariz. 395, 857 P.2d 1249 (1993).

Immediately after the jury was chosen and the venire members were dismissed, but before the jury was sworn, appellant challenged the prosecutor's use of strikes to remove two Hispanics from the jury.[1] Without asking the court to rule on whether appellant had made a *prima facie* showing of racial discrimination, *Batson,* the prosecutor proceeded to give the following explanation of her strikes:

> With respect to Juror No. 1, Mr. [B.], the reason he was struck is he indicated when he answered the questions on the board that he lived in Pima County, but he couldn't tell us where he lived. All he could do is give us a Zip Code. And that concerned me with respect to that.
>
> Juror No. 5, Mr. [M.] was struck. Basically, that was my last strike. It was the juror that I had the least information about, with respect to he didn't answer a lot of questions. He just gave us information on the board, and that's the reason he was struck.

In response, appellant noted that several other panel members, including two who were selected as jurors, had also given limited information. The challenge to Mr. B. was

---

1. Appellant also raised the issue with respect to an African-American member of the panel who was stricken by the prosecutor. He has expressly abandoned this claim on appeal.

based on his response to one of the six standard questions all panel members were asked, which was to identify the "area of town" where he lived. Mr. B. responded that he resided in Pima County. When asked what part, he answered, "No, I think I'm out of the county. I'm Zip Code 85746." He then stated, "I'm Yaqui reservation." Appellant's response to the prosecutor's explanation of her strike was that it was irrelevant whether he knew if he lived in the city or the county. Although voicing concerns as to the timeliness of appellant's motion, the trial court denied it on the basis that the prosecutor's statements were "racially neutral."

■ Under *Batson,* the burden is on a defendant first to make a *prima facie* showing of racial discrimination by the prosecutor. The prosecutor then has the burden of giving a race-neutral explanation for striking the panel members in question. Finally, the trial court must determine whether the defendant has met his or her burden of proving purposeful discrimination by the prosecutor. Appellant contends that the prosecutor's explanations were not case related, were not corroborated by the record, and were the type of explanation that can serve as a pretext for racial discrimination. *See Cruz.* The state's only response is that the claim is waived because appellant's objection in the trial court was untimely. We disagree. While the trial court correctly pointed out to counsel that the objection should have been raised as soon as he was apprised of the prosecutor's strikes, so that any panel member improperly stricken by the prosecutor could be placed on the jury, we do not believe a waiver occurred here. The objection was raised while the panel members were still available to be recalled to the courtroom. Further, without detailing the colloquy between counsel and the court, it is apparent that counsel was inexperienced, was proceeding in good faith, was attempting to comply with what he perceived the court's procedural schedule to be and, given his incorrect understanding, raised the objection at the earliest possible moment. We therefore address the claim on the merits.

■ Our review is rendered more difficult by the fact that the state has not chosen to respond on the merits. Moreover, as has unfortunately become common practice, although the prosecutor later brought to the court's attention the fact that three of the ten impaneled jurors were Hispanic, she did not request a ruling on whether a *prima facie* case of discrimination had been made before explaining her strikes. Had she done so, we have little doubt that the trial court would have denied the motion on that basis. Because she failed to address the first hurdle of the *Batson* review, we are required to address the second and third, that is, did the prosecutor give race-neutral explanations for her strikes and did the defendant prove purposeful discrimination? *See State v. Rodarte,* 173 Ariz. 331, 842 P.2d 1344 (App.1992); *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

■ We note that *Batson* jurisprudence has evolved since our supreme court's decision in *Cruz.* In *Purkett v. Elem,* ― U.S. ―, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the United States Supreme Court retreated from its earlier pronouncement that the reason given by the prosecutor for a strike must be "related to the particular case to be tried," *Batson,* 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88, explaining that a legitimate reason "is not a reason that makes sense, but a reason that does not deny equal protection." *Purkett,* ― U.S. at ―, 115 S.Ct. at 1771, 131 L.Ed.2d at 840. Quoting *Hernandez,* the Court stated:

> The second step of this process does not demand an explanation that is persuasive, or even plausible. 'At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'

*Purkett,* ― U.S. at ―, 115 S.Ct. at 1771, 131 L.Ed.2d at 839 (citations omitted). It is only at the third stage of the proceedings, when the trial court determines whether the defendant has met his or her burden of proving purposeful discrimination, that the persuasiveness of the reason given becomes relevant. *Purkett.*

With respect to Mr. B., it appears that the prosecutor was concerned with his intellectual limitations as, she believed, evidenced by the fact that he was unable to comply with the trial court's request that the panel members identify "just the area of town [where they lived]—for example, north, south, central." With respect to Mr. M., it appears that the prosecutor was concerned that she did not know enough about him and therefore chose not to risk putting him on the jury. Both explanations are unrelated to race; we therefore address the third step in the process.

Although the trial court expressly found only that the statements made by the prosecutor were "racially neutral," we infer from its impanelment of the jury that it also found no purposeful discrimination. That determination properly rested on an assessment of the prosecutor's credibility. *Purkett.* However, the trial court could also consider the fact that these were not the only minority panel members and that three of those chosen to serve on the jury had Hispanic surnames. *See State v. Jordan,* 171 Ariz. 62, 828 P.2d 786 (App.1992). This fact, coupled with the explanations, albeit limited, given by the prosecutor, support the trial court's implicit conclusion that appellant failed to meet his burden of proving that the prosecutor engaged in purposeful discrimination in striking Mr. B. and Mr. M. Accordingly, the trial court's finding was not clearly erroneous and we find no basis for reversal under *Batson.*

We have reviewed the entire record for fundamental error and have found none. We therefore affirm.

ESPINOSA, P.J., and HATHAWAY, J., concur.