955 P.2d 39

**STATE of Arizona, Appellee,**

v.

**Donnie HENRY, Appellant.**

**No. 1 CA–CR 97–0143.**

Court of Appeals of Arizona, Division 1, Department D.

Dec. 23, 1997.

Review Denied May 19, 1998.

---

**284**

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Jacquelyn B. Eskay, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

KLEINSCHMIDT, Judge.

The charges in this case arose out of events that occurred when two police officers attempted to stop a car for expired license plates. The driver of the car refused to stop. The officers pursued until the car did stop, and the driver, the Defendant, fled on foot until one of the officers forced him to the ground. The Defendant refused to be handcuffed, squirming and tucking his arms underneath his body. He also shouted to bystanders to get the officer off his back. Several people in the crowd approached the officer and someone threw a beer bottle which shattered and sprayed glass on the officer. The Defendant and the crowd were subdued with pepper spray, and when other officers arrived, the Defendant was taken into custody.

The Defendant was charged with unlawful flight, a class five felony, and with resisting arrest, a class six felony. The jury found him not guilty of unlawful flight and guilty of resisting arrest. This appeal followed.

## THE DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS NOT VIOLATED

█ The Defendant contends that his right to a speedy trial was violated. The Arizona Rules of Criminal Procedure require that a Defendant be tried within 120 days from the date of his initial appearance or within 90 days from the date of his arraignment, whichever is greater. Ariz. R.Crim. P. 8.2(c).

Both parties filed notices of change of judge as to different judges assigned to the case. The legal question the case poses is whether the time required to reassign the case when the State files a notice of change

of judge is excludable when calculating the last day for trial under Rule 8. The record is incomplete and confusing as to when the parties exercised their notices of change of judge and when the case was reassigned pursuant to those notices. It appears that both the attorneys and several of the judges involved were laboring under various mistakes of fact when they addressed this issue. We explain this confusion in more detail in the appendix to this decision so we need not elaborate on it here. The Defendant's argument, based on assumptions he has made about the sequence of events, is that he was denied a speedy trial because the delay occasioned by the State's exercise of its right to file a notice of change of judge was erroneously found to be excludable time under Rule 8. We disagree with the Defendant on that point, and we affirm.

Rule 8.4(d) provides that "[d]elays resulting from continuances in accordance with Rule 8.5" are excluded from the calculation of the speedy trial time. Rule 8.5(b) provides that a court may grant a continuance beyond the original speedy trial time limits "upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice."

In this case, the State had the right, equal to the Defendant's, to request a change of judge. Ariz. R.Crim. P. 10.2; *see State v. Barnes,* 118 Ariz. 200, 203, 575 P.2d 830, 833 (1978) and *Farr v. Superior Court,* 114 Ariz. 485, 486, 562 P.2d 365, 366 (1977). To refuse to exclude time under these circumstances would nullify that right. In addition, the absence of key court personnel is an extraordinary circumstance for purposes of Rule 8.5. *State v. Schaaf,* 169 Ariz. 323, 328, 819 P.2d 909 (1991); *see also State v. Lukezic,* 143 Ariz. 60, 70, 691 P.2d 1088, 1098 (1984) (stating that illness of trial judge justified exclusion of reasonable time from speedy trial period where accused asserted no demonstrable prejudice). Thus, the brief time necessary to reassign the case was excludable under Rule 8 because it was in the interest of justice to procure a judge to preside over the case. The Defendant has not demonstrated any prejudice, and the continuance of the trial to December 4 did not violate his right to a speedy trial.

## THE DEFENDANT'S ACTIONS CONSTITUTED THE CRIME OF RESISTING ARREST

■ The crime of resisting arrest is defined as the following:

A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:

1. Using or threatening to use physical force against the peace officer or another; or

*2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.*

Arizona Revised Statutes Annotated ("A.R.S.") § 13–2508 (emphasis added). The Defendant forcibly resisted being handcuffed which was an attempt to prevent the officer from taking him into custody. The crowd, at the Defendant's behest, also intervened with the same purpose and in a manner that created a risk of injury to the officer. All of this clearly supports the conviction for resisting arrest.

## THE TRIAL COURT DID NOT ERR IN ALLOWING THE STATE'S PREEMPTORY CHALLENGE OF AN HISPANIC MEMBER OF THE JURY PANEL

■ During jury selection, the Defendant, relying on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), raised a challenge to the State's use of a preemptory strike to remove an Hispanic woman from the panel of prospective jurors. *Batson* held that the Equal Protection Clause of the United States Constitution limits the right to exercise preemptory challenges by prohibiting the exclusion of people from jury service solely on account of their race. *Batson* established a three-step test for determining whether a constitutional violation has occurred: (1) The party opposing the strike must make a *prima facie* showing that the

strike was made on the basis of race; (2) if the requisite showing is made, the burden shifts to the one who made the strike to articulate a race-neutral explanation for the strike; and (3) if the proponent of the strike articulates a race-neutral reason, the trial court must decide whether the one who challenges the strike has carried the burden of proving purposeful discrimination. *Id.* at 97–98, 106 S.Ct. at 1723–24.

■ Both parties and the judge seem to have assumed that the first step in the *Batson* analysis, a *prima facie* showing that the strike was exercised on the basis of race, had been satisfied. They proceeded to the second step, and the prosecutor gave the following reason for the challenge:

> [A]s she [The prospective juror] rose and addressed the Court with regard to the board of questions that the Court asked her to, made no eye contact with the State's attorney, yet her body language and eye contact was made, quite frankly, with defense counsel and the defendant. And there was absolutely no movement toward the State's counsel, which that body language alone indicated to the State's counsel, for various reasons, that the preemptory strike should be exercised towards [the prospective juror].

The trial court allowed the strike, finding that the prosecutor's explanation was race-neutral and that she had not engaged in purposeful discrimination.

The Defendant argues that the trial court erred because it did not follow the rule laid down by our supreme court in *State v. Cruz,* 175 Ariz. 395, 857 P.2d 1249 (1993), that when "the state offers a facially neutral, but wholly subjective, reason for a preemptory strike, it must be coupled with some form of objective verification before it can overcome the *prima facie* showing of discrimination." *Id.* at 399, 857 P.2d at 1253.

■ We reject the Defendant's argument because after *Cruz* was decided, the United States Supreme Court, in the case of *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), reinterpreted *Batson* in a way that eliminates the *Cruz* requirement. *Purkett* held that at step two

of the *Batson* analysis, all that is necessary is for the proponent of the strike to offer a race-neutral reason for the strike. *Id.* at 768, 115 S.Ct. at 1771. The explanation need not be persuasive or plausible. *Id.* If a discriminatory intent is not inherent in the reason offered, the explanation will be deemed race neutral. *Id.* The matter then proceeds to the third step, where the opponent of the strike has the burden of proving that the reason given for the strike is a pretext for purposeful discrimination. *Id.* It is at this stage that the implausibility of the explanation may be considered in determining whether the explanation is pretextual. *Id.*

The objective verification requirement laid down in *Cruz* related to the step two determination of whether the proponent had a race-neutral reason for exercising the strike. *Cruz* is based on the assumption that the race-neutral reason must relate to the case to be tried and be plausible. Whether *Purkett* is viewed as changing *Batson* or merely clarifying it, that inquiry into plausibility has been eliminated, and with it, so has the *Cruz* requirement of objective verification. Division Two of this Court reached the same conclusion in *State v. Harris,* 184 Ariz. 617, 911 P.2d 623 (1995).

Our conclusion is bolstered by the fact that the three out-of-state cases that *Cruz* relied on in formulating the objective verification requirement are no longer good law in the states where they were decided. *See Goode v. Shoukfeh,* 943 S.W.2d 441, 445 (Tex.1997), abandoning sub silentio, *Smith v. State,* 790 S.W.2d 794 (Tex.App.1990); *Melbourne v. State,* 679 So.2d 759, 763–64 (Fla.1996), abandoning sub silentio, *Hill v. State,* 547 So.2d 175 (Fla.Dist.Ct.App.1989); *Gilchrist v. State,* 340 Md. 606, 667 A.2d 876 (1995) (Chasanow and Bell, JJ., concurrence), approved in *Ball v. Martin,* 108 Md.App. 435, 672 A.2d 143, 150 (1996), abandoning, *Chew v. State,* 317 Md. 233, 562 A.2d 1270 (1989).

We have considered whether the *Cruz* objective verification requirement can apply at step three of the *Batson* analysis when the trial court determines whether the explanation for the strike is pretextual. While conscientious trial judges will always look for objective signs to verify subjective explana-

tions, we do not believe that we can mandate that the trial judge's conclusions always be based on objective verification. We have found no case decided after *Purkett* that transports the objective verification requirement to step three of the *Batson* inquiry. More important, we believe that to mandate objective findings at any step of the *Batson* inquiry would be incompatible with *Purkett.* It is now clear that the burden never shifts away from the opponent of a preemptory strike to prove that it was exercised for a discriminatory reason.

The judgment of conviction and sentence imposed are affirmed.

RYAN, P.J., and EHRLICH, J., concur.

## APPENDIX

The original last day for speedy trial purposes was November 26, 1996. On November 21, 1996, defense counsel filed a notice of change of judge as to Judge Linda Scott pursuant to Ariz. R.Crim. P. 10.2. The Defendant has consistently argued that the case was re-assigned to Pro Tem Judge Kenneth Skiff on November 25, 1996, and concedes that the time from November 21 to November 25 was excluded from the Rule 8 time limits because it was occasioned on behalf of the Defendant. After the Defendant noticed Judge Scott, the State noticed Judge Skiff. Both the State's notice and the minute entry show that this was done on November 22. That being the case, it was a mistake to attribute all the time between November 21 and November 25 to the Defendant. In any event, after adding these four days to the last day, the new last day became November 30, 1996. Because this was a Saturday, the last day for speedy trial purposes became December 2, 1996.

The matter is complicated by the fact that after the State filed its notice as to Judge Skiff, the case was reassigned to Judge Peter D'Angelo. For reasons that do not appear in the record, on November 26, Judge D'Angelo transferred the case back to the case transfer coordinator. Judge D'Angelo, again for reasons that do not appear in the record, attributed all the delay to the Defendant and excluded all time from November 26, 1996 through December 3, 1996 from the Rule 8

calculation and found the new last day to be December 4, 1996.

The matter was transferred to Judge Bernard Dougherty who held a hearing on December 4 on the Defendant's motion to dismiss for denial of speedy trial. Judge Dougherty recognized that any delay occasioned by the State's notice could not be attributed to the Defendant, but he accepted the Defendant's apparently mistaken assertion that the case had been assigned to Judge Skiff on November 25. Judge Dougherty denied the motion to dismiss and began trial on December 4.

It is possible, given all the confusion, that even if the delay occasioned by the State filing a notice of change of judge is excluded, the Rule 8 deadline had passed before December 4. If that is true, any argument the Defendant might have made with respect to it has been waived. *See State v. Killian,* 118 Ariz. 408, 577 P.2d 259 (App.1978).