992 P.2d 1122

**STATE of Arizona, Appellee,**

v.

**George Roosevelt EAGLE, Appellant.**

**No. 1 CA–CR 97–0504.**

Court of Appeals of Arizona,
Division 1, Department D.

March 26, 1998.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Division, and J.D. Nielsen, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Anna M. Unterberger, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

WEISBERG, Judge.

¶ 1 George Roosevelt Eagle ("defendant") appeals his convictions and sentences on multiple counts of kidnapping, aggravated assault, sexual abuse, and sexual assault. For the following reasons, we affirm.

## FACTS

¶ 2 In the early morning hours, L.W. awoke to the sound of someone opening or closing the door of her Phoenix apartment. L.W. had been sleeping in a bedroom with her four young daughters. Her friend, T.T., was sleeping in another bedroom. A man appeared in the doorway to the bedroom and called L.W. by name. L.W. could not see the man clearly at first, but when he stepped further into the room, she recognized him as defendant. L.W. knew defendant as the boyfriend of one of her friends.

¶ 3 Upon entering the bedroom, defendant grabbed L.W.'s arm and placed a knife to her neck. He told her not to scream. He then said that he was high on PCP, that he and his girlfriend were "over with," and that he "had nothing else to live for." As he took L.W. into the adjacent hallway, defendant told her to remove her clothes.

¶ 4 T.T. was also awakened by the sound of the door. Thinking it might be her boyfriend, she walked out into the hallway. There, she saw defendant holding a knife to L.W.'s throat. Before T.T. could react, defendant grabbed her and pulled her next to L.W. Threatening both women with the knife, he forced them to go back into T.T.'s bedroom and ordered them to disrobe.

¶ 5 Defendant told both women to lie on the bed. He then forced L.W. to perform oral sex on him. On more than one occasion during the assault, defendant engaged in oral contact with L.W.'s breasts. He also ordered T.T. to perform oral sex on him and engaged in vaginal intercourse with her.

¶ 6 Defendant then asked the women for some form of identification and informed them that, if they called the police, he would have "his family and friends come back for [them]." After telling L.W. that he would "be back," defendant finally left. L.W. immediately telephoned the police.

¶ 7 Defendant was indicted on two counts of kidnapping, one count of aggravated assault, three counts of sexual assault, one count of sexual abuse, and one count of burglary. A jury acquitted him of the burglary charge, but convicted him on all remaining counts. The trial court found that defendant was on release from confinement when he committed the offenses. *See* Ariz.Rev.Stat. Ann. ("A.R.S.") § 13–604.02(A) (Supp.1997). Defendant was sentenced to presumptive terms on all counts, with the sentence for aggravated assault and one of the kidnapping counts to be served concurrently, and all other sentences to be served consecutively. His consecutive sentences totalled 55.5 years in prison. Defendant timely appealed.

## ISSUES

¶ 8 Defendant raises four issues on appeal:

I. Did the trial court err in denying his *Batson* challenge to the state's peremptory strike of a Hispanic juror?

II. Did the trial court err in giving the jury a *Willits* instruction different from the one defendant requested?

III. Did defendant's convictions and consecutive sentences for the kidnappings and sexual offenses constitute double jeopardy?

IV. Did defendant's consecutive sentences for the kidnappings and sexual offenses violate A.R.S. section 13–116?

## DISCUSSION

### I.  Defendant's Challenge To The Peremptory Strike of a Hispanic Juror

#### A.  Batson v. Kentucky

¶ 9 Relying on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), defendant argues that the

state improperly exercised one of its peremptory strikes to remove a Hispanic juror from the venire. Pursuant to *Batson,* once the opponent of a peremptory challenge has made a prima facie case of racial discrimination, the proponent of the strike must come forward with a race-neutral explanation for the strike. *See 476 U.S. at 96–98, 106 S.Ct. at 1723–24.* The United States Supreme Court recently held in *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), that the proponent's explanation need only be race-neutral. In other words, "a 'legitimate reason' is not a reason that necessarily makes sense, but a reason that does not deny equal protection." *Id.* at 769, 115 S.Ct. at 1771. Once the proponent provides a legitimate race-neutral explanation, the trial court must decide whether the opponent of the strike has proven purposeful racial discrimination. *See id.* at 767, 115 S.Ct. at 1770.

¶ 10  In this case, defendant challenged the state's peremptory strike of D.A., a Hispanic member of the venire. The state objected that defendant had failed to make a prima facie case that it had exercised its strike in a discriminatory manner. The trial court found that defendant did make a prima facie case, but that the state had provided a race-neutral basis for the strike and that defendant did not prove purposeful racial discrimination.

▮ ¶ 11  We agree with the trial court's ultimate denial of defendant's *Batson* challenge. The prosecutor explained that she struck D.A. because he "appeared young, as opposed to many of the other jurors," and because he was "extremely nervous" while answering the jury questionnaire. Relying on our supreme court's decision in *State v. Cruz,* 175 Ariz. 395, 399, 857 P.2d 1249, 1253 (1993), defendant nevertheless argues that the state's justification for striking D.A. was "wholly subjective" and therefore insufficient to overcome a prima facie showing of discrimination absent some form of objective verification. But even assuming that defendant made a prima facie showing of discriminatory intent in this case, we reject that argument. As we recently held, *Purkett* "eliminated" the "objective verification requirement" of *Cruz. State v. Henry,* 191

Ariz. 283, 286, 955 P.2d 39, 42 (App.1997). *But see State v. Trostle,* 191 Ariz. 4, 12, 951 P.2d 869, 877 (1997)(refusing to examine the "continued validity" of *Cruz* in light of *Purkett* ). Because the state's explanation was "race-neutral," as the United States Supreme Court defined that term in *Purkett,* the trial court did not abuse its discretion in concluding that the state satisfied the second step of the *Batson* analysis.

▮ ¶ 12  Nor did the court abuse its discretion in finding that defendant failed to meet his burden of proving that the state struck D.A. because of his ethnic origin, the third step in the *Batson* analysis. *See Purkett,* 514 U.S. at 767, 115 S.Ct. at 1770. Although not dispositive, the fact that the state accepted other Hispanic jurors on the venire is indicative of a nondiscriminatory motive. *See Turner v. Marshall,* 121 F.3d 1248, 1254 (9th Cir.1997). In addition, the record here does not indicate that the state failed to exercise peremptory challenges on non-minority jurors who "appeared young" or were "extremely nervous," a fact that might have shown that the state's justifications for striking D.A. were merely pretextual. *See id.* at 1252 (noting that peremptory challenges " 'cannot be lawfully exercised against potential jurors of one race unless potential jurors of another race with comparable characteristics are also challenged.' ")(quoting *Doss v. Frontenac,* 14 F.3d 1313, 1316–17 (8th Cir. 1994)). On this record, therefore, we find no error in the trial court's denial of defendant's *Batson* challenge.

### B.  State Constitutional Challenge to the Peremptory Strike

▮ ¶ 13  Defendant also argues that the prosecution's peremptory strike of D.A. violated the impartial jury clause of article 2, section 24 of the Arizona Constitution. Because defendant did not raise this state constitutional argument before the trial court, the issue is waived absent fundamental error. *See State v. Holder,* 155 Ariz. 83, 85, 745 P.2d 141, 143 (1987)(absent fundamental error, even constitutional claims are waived if not raised at trial).

¶ 14 In *State v. Rodarte*, 173 Ariz. 331, 336, 842 P.2d 1344, 1349 (App.1992), Division Two of this court held that the protection afforded by article 2, section 24 is no greater than that provided by its federal counterpart, the Sixth Amendment. Also, the United States Supreme Court has held that, if the venire itself is drawn from a fair cross-section of the community, even the exercise of a peremptory strike that excludes a cognizable racial group from the jury does not offend the Sixth Amendment. *See Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990).

¶ 15 Nonetheless, defendant urges this court to reject *Rodarte* and to hold that article 2, section 24 affords greater protection to criminal defendants than does the Sixth Amendment. But he offers no substantive analysis to support his argument. Nor does he indicate how the state's peremptory strike of D.A., which we have held did not violate *Batson*, deprived him of an impartial jury. We therefore find no violation of defendant's rights under article 2, section 24.

## II. WILLITS INSTRUCTION

¶ 16 Defendant requested and received a *Willits* instruction in response to the state's loss or destruction of a handwritten police report. *See State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964). Defendant expressly requested Standard Criminal Instruction No. 10 from the 1996 version of the Revised Arizona Jury Instructions ("RAJI")(Criminal):

> If you determine that the State has lost, destroyed, or failed to preserve evidence whose contents or quality are important to the issues in this case, and that the explanation for the loss, destruction, or failure to preserve is inadequate, then you *should assume* that the evidence was unfavorable to the State. This fact alone may create a reasonable doubt about the defendant's guilt.

(Emphasis added.)

¶ 17 But, instead, the trial court gave the 1989 version:

> If you find that the State has lost, destroyed, or failed to preserve evidence whose contents or quality are important to

the issues in this case, then you should weigh the explanation, if any, given for the loss or unavailability of the evidence. If you find that any such explanation is inadequate, then you *may draw an inference* unfavorable to the State, which in itself may create a reasonable doubt as to the defendant's guilt.

(Emphasis added.)

¶ 18 Although defendant did not object to the court's use of the older RAJI instruction, on appeal he argues that it is "less-favorable" and more "permissive" and therefore warrants a new trial. Because defendant failed to inform the trial court of the discrepancy between the two versions of the instruction and did not object when the court gave the older version, he has waived this issue absent fundamental error. *See Holder*, 155 Ariz. at 85, 745 P.2d at 143.

¶ 19 We find no error, fundamental or otherwise, in the court's use of the earlier version of the *Willits* instruction. *Willits* itself speaks in terms of a permissive inference. The instruction requested by the defendant and approved by the supreme court in that case used the expression "may infer." 96 Ariz. at 187, 393 P.2d at 276. We therefore conclude that the *Willits* instruction given in this case was not erroneous.

## III. DOUBLE JEOPARDY

¶ 20 Defendant next argues that his convictions and sentences for the kidnappings and the sexual offenses violate both the federal and Arizona double jeopardy clauses. We disagree.

¶ 21 The double jeopardy clauses of both the federal and Arizona constitutions prohibit a person from being put in jeopardy twice for the "same offense." *See* U.S. Const. amend. V; Ariz. Const. art. 2, § 10. These clauses preclude both multiple prosecutions and multiple punishments for the same offense. *See State v. Cook*, 185 Ariz. 358, 359, 365, 916 P.2d 1074, 1075, 1081 (App.1995). When, as in this case, the same act or transaction violates two distinct criminal statutes, we apply the test enunciated in *Blockburger v. United States*, 284 U.S. 299,

52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether that act or transaction constitutes a single "offense." *Id.* Pursuant to *Blockburger*, if each criminal statute requires "proof of a fact which the other does not," the statutes do not govern the same offense. *See* 284 U.S. at 304, 52 S.Ct. at 182. In applying the *Blockburger* test, "we need only look to the statutory elements of the offenses to see if each statute contains an element not contained in the other; we may not consider the particular facts of the case in making that determination." *Cook,* 185 Ariz. at 361, 916 P.2d at 1077 (citing *Illinois v. Vitale,* 447 U.S. 410, 416–19, 100 S.Ct. 2260, 2265–67, 65 L.Ed.2d 228 (1980)).

¶ 22   Under *Blockburger*, kidnapping is not the "same offense" as sexual assault or sexual abuse. For example, kidnapping requires proof that the defendant knowingly restrained another person. *See* A.R.S. § 13–1304. Neither sexual abuse nor sexual assault requires proof of a knowing restraint. *See* A.R.S. §§ 13–1404, –1406. Likewise, sexual assault and sexual abuse both require proof of sexual contact; kidnapping does not. *See* A.R.S. §§ 13–1304, 1404, and 1406.

¶ 23   Defendant nevertheless argues that he has been placed in double jeopardy because his kidnapping convictions were classified as class 2 felonies only because the state proved—as an element of the kidnapping offenses—that he committed the sexual offenses before releasing his victims. A.R.S. section 13–1304(B) provides in relevant part:

> Kidnapping is a class 2 felony unless the victim is released voluntarily by the defendant without physical injury in a safe place prior to arrest and prior to accomplishing any of the further enumerated offenses in subsection A of this section in which case it is a class 4 felony.

¶ 24   Defendant correctly observes that his kidnapping convictions were class 2 felonies because he committed the sexual offenses before releasing L.W. and T.T. But we do not accept his argument that proof of the sexual offenses was therefore a statutory element of the kidnapping offenses thereby implicating double jeopardy concerns. The jury convicted defendant of the offense of kidnapping. For sentencing purposes, kidnapping may be classified as a class 2, 3, or 4 felony, depending on the facts specific to the crime. *See* A.R.S. § 13–1304(B). The classification of the particular kidnapping offense, however, does not alter the statutory elements of the crime of kidnapping.

¶ 25   We are aware that Division Two of this court has held that "the voluntary release . . . of the victim in a safe place prior to arrest is an element of the offense of second-degree kidnapping." *State v. Sterling,* 148 Ariz. 134, 136, 713 P.2d 335, 337 (App.1985); *accord State v. McMillen,* 154 Ariz. 322, 324, 742 P.2d 823, 825 (1987), *disapproved on other grounds, Rainwater v. State,* 189 Ariz. 367, 369, 943 P.2d 727, 729 (1997). Citing the decisions of Division Two, the United States Court of Appeals for the Ninth Circuit has also observed that the absence of voluntary release is "an element of second-degree kidnapping." *Hennessy v. Goldsmith,* 929 F.2d 511, 514 (9th Cir.1991). We, however, disagree with these decisions.

¶ 26   Arizona does not recognize the offense of "second-degree kidnapping." As the supreme court did in *Rainwater,* we adopt instead what we consider to be the better-reasoned analysis of Justice Corcoran's concurrence in *State v. Atwood,* 171 Ariz. 576, 662, 832 P.2d 593, 679 (Corcoran, J., concurring). As Justice Corcoran observed, "[Section] 13–1304(B) merely sets forth *the classification scheme* for the offense; it has nothing to do with the elements the state must prove to convict a defendant of kidnapping." *Id.*[1] We therefore conclude that defendant's convictions do not violate his rights against double jeopardy.

## IV.   DOUBLE PUNISHMENT

¶ 27   Defendant further argues that his consecutive sentences for the kidnappings

---

1.   For the same reasons, we find defendant's reliance on *State v. Jeune,* 332 N.C. 424, 420 S.E.2d 406 (1992), to be misplaced. The North Carolina kidnapping statute at issue in *Jeune* expressly provides for "two degrees of kidnapping." *See* N.C. Gen.Stat. § 14–39(b)(1996). The offense of first-degree kidnapping requires proof either that the victim was not released in a safe place or was seriously injured or sexually assaulted. *Id.*

and sexual offenses constitute double punishment under A.R.S. section 13–116. *See State v. Williams,* 182 Ariz. 548, 560, 898 P.2d 497, 509 (App.1995). Section 13–116 provides that "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." To determine whether defendant's consecutive sentences were permissible in this case, we must apply the following test:

> The first step in the analysis is to determine which crime arising out of the incident is the "ultimate crime." The "ultimate crime" is the crime which has the factual nexus to all the other crimes. The ultimate crime will usually be the primary object of the episode, and it will usually be the most serious crime committed on the given occasion. Once the ultimate crime is determined, the test to be applied is as follows. If, considering all of the facts of the incident and subtracting the facts necessary to convict of the ultimate crime, the remaining facts satisfy the elements of the remaining crime(s), then multiple punishments *may* be permissible. Assuming that this first step is satisfied, multiple punishments are ordinarily permissible only if (1) given the entire criminal episode, the defendant could have committed the ultimate crime without committing the other crime(s) or (2) in committing the other crime(s), the defendant caused the victim to suffer additional risk or harm beyond that inherent in the ultimate crime.

*Williams,* 182 Ariz. at 560, 898 P.2d at 509 (quoting *State v. Alexander,* 175 Ariz. 535, 537, 858 P.2d 680, 682 (App.1993)).

¶ 28 In this case, the parties agree that the sexual offenses were, collectively, the "ultimate crime" for each victim. *Accord Williams,* 182 Ariz. at 560, 898 P.2d at 509. Subtracting the facts necessary to convict defendant of the sexual offenses, we are left with facts sufficient to satisfy the elements of kidnapping as to each victim. Specifically, defendant grabbed L.W.'s arm and placed a knife to her neck. He then took her into the adjacent hallway, where the two encountered T.T. There, defendant grabbed T.T. and

pulled her next to L.W. Threatening both women with the knife, defendant then forced them to go back into T.T.'s bedroom. These facts are sufficient to support defendant's kidnapping convictions.

¶ 29 Thus, pursuant to *Williams,* consecutive sentences for the kidnapping and sexual offense convictions are permissible under these facts if (1) defendant could have committed the sexual offenses without committing the kidnappings, or (2) in committing the kidnappings, defendant caused L.W. and T.T. to suffer additional risk or harm beyond that inherent in the sexual offenses. We hold that, by restraining L.W. and T.T. and telling them that he "didn't care about killing" them, while repeatedly threatening them with a knife, defendant caused the victims to suffer additional harm beyond that inherent in the sexual offenses. We therefore find no error in the imposition of consecutive sentences for the kidnappings and the sexual offenses.

## CONCLUSION

¶ 30 Finding no error, we affirm defendant's convictions and sentences.

CONCURRING: E. G. NOYES, Jr., Judge, and EDWARD C. VOSS, Judge.