*18 P.3d 160*

**STATE of Arizona, Appellee,**

**v.**

**DeAndre Lavar LUCAS, Appellant.**

**No. 1 CA–CR 99–0567.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 13, 2001.

Review Denied May 23, 2001.

Janet A. Napolitano, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Consuelo M. Ohanesian, Assistant Attorney General and James P. Beene, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

GARBARINO, Judge.

¶ 1 The defendant, DeAndre Lavar Lucas, appeals his convictions for attempted sexual assault, sexual abuse of a child under the age of fifteen, and kidnapping. The defendant contends that the trial court erred when, despite defense counsel's *Batson*[1] objection, it permitted the prosecutor to peremptorily strike the only African American panel member based on the pretext that he was a "southern male." We agree and reverse.

¶ 2 On a December evening in 1998, the defendant, who was eighteen years old at the time, attacked the victim, a fourteen-year-old female, and stole her purse and its contents. The victim testified that the defendant had forced her to the ground, attempted to take her purse, touched her breasts, tried to unzip her pants, and choked her until she fainted. She also testified that when she regained consciousness, both the defendant and her purse were gone. Although the defendant admitted that he had attacked the victim, he testified that he was only after the victim's money and he had made no attempt to kidnap or rape her.

¶ 3 A grand jury indicted the defendant on one count of attempted sexual assault, a class 3 felony and dangerous crime against children, one count of sexual abuse, a class 3 felony and dangerous crime against children, and one count of kidnapping, a class 2 felony and dangerous crime against children. The case proceeded to trial and the jury convicted the defendant as charged.

¶ 4 The trial court suspended the defendant's sentence and imposed lifetime probation for the attempted sexual assault and sexual abuse convictions. For the kidnapping conviction, the trial court sentenced the defendant to the presumptive term of seventeen years in prison, with credit for 178 days of pre-sentence incarceration. The defendant filed a timely notice of appeal.

¶ 5 The defendant argues that the State violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution when it peremptorily struck the only African American male juror on the jury panel, in part because he was a southern male. The defendant also urges us to explore his claim that the State's actions violate the Arizona Constitution. We note that, absent a showing of fundamental error, defense counsel waived any state constitutional violation by failing to raise it at trial. *See State v. Eagle,* 196 Ariz. 27, 30, ¶ 13, 992 P.2d 1122, 1125 (1998), *aff'd,* 196 Ariz. 188, 994 P.2d 395, *cert. denied,* — U.S. —, 121 S.Ct. 102, 148 L.Ed.2d 60 (2000). However, with respect to *Batson* challenges, even if we were to conclude that the defendant did not waive what he believes to be a state constitutional violation, the protections under our state constitution are no greater than those provided for under the federal constitution. *Id.* at 31, ¶ 14, 992 P.2d at 1126.

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

¶ 6 Turning, then, to the remaining issue, when considering a *Batson* challenge, we will defer to the trial court's findings of fact unless clearly erroneous. *State v. Harris,* 184 Ariz. 617, 618, 911 P.2d 623, 624 (1995). We review de novo the trial court's application of the law. *Ramirez v. Health Partners of S. Ariz.,* 193 Ariz. 325, 327–28, ¶ 6, 972 P.2d 658, 660–61 (1998) ("Issues involving ... constitutional claims are questions of law subject to this court's *de novo* review.").

¶ 7 In *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam), the United States Supreme Court refined the test for determining whether a juror has been struck for a reason violative of *Batson.* First, the opponent of the strike must make a *prima facie* showing of discrimination on the basis of race, gender, or some other protected characteristic. *Id.* at 767, 115 S.Ct. 1769; *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 144–45, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). Next, the proponent of the strike must offer a neutral basis for the strike. *Purkett,* 514 U.S. at 767, 115 S.Ct. 1769. The basis must be more than a mere denial of improper motive, but it need not be "persuasive, or even plausible." *Id.* at 768, 115 S.Ct. 1769. After a neutral basis has been offered, the opponent of the strike must persuade the trial court that the proponent's reason is pretextual and that the strike is actually based on race, gender, or another protected characteristic. *Id.*

¶ 8 Defense counsel objected to the panel member's removal on the grounds that he "is the only black male on the entire panel," "[h]e's educated in the law [and] ... understands the standards," and "he's from the south, he understands and knows the stereotypes in which my client's going to be dealing with." The prosecutor stated that she wished to remove the venire person because he is a lawyer, and she never allows lawyers on her juries. She also stated that she did not want to have the venire person on the jury because "[h]e's from the south.... I have a problem with males from the south having prejudice against women working," particularly when they are pregnant, as the prosecutor apparently was at the time of trial. The trial court overruled the defendant's objection to the State's strike and concluded that the State's basis that the panel member was an attorney was proper. The court went on to state, "It's very seldom that attorneys like to leave an attorney or a judge on a jury panel. And I find that the State's strike was made for a nondiscriminatory purpose, so I will allow it." The court did not address the prosecutor's additional reason for striking the panel member.

¶ 9 The prosecutor offered two grounds for her strike. The first reason given for the strike—that the venire person was an attorney—was a permissible race and gender neutral reason. A neutral explanation for a peremptory strike need not be coupled with some form of objective verification. *Eagle,* 196 Ariz. at 30, ¶ 11, 992 P.2d at 1125; *State v. Henry,* 191 Ariz. 283, 286, 955 P.2d 39, 42 (1997); *see State v. Trostle,* 191 Ariz. 4, 12, 951 P.2d 869, 877 (1997) (refusing to examine "the continued validity of [*State v. Cruz,* 175 Ariz. 395, 857 P.2d 1249 (1993), and its requirement that explanations be objectively verifiable] in light of ... *Purkett*").

¶ 10 By contrast, the second basis given for the strike—that southern men take a negative view of pregnant women who work—is an unacceptable anecdotal generalization without basis in fact. *Cf. Payton v. Kearse,* 329 S.C. 51, 495 S.E.2d 205, 208 (1998) (finding counsel's reason for striking a panel member—that she was a "redneck"—was "not a valid race—neutral reason to strike a potential juror"); *United States. v. Greene,* 36 M.J. 274, 278–79 (C.M.A.1993) (holding that counsel's strike of a panel member due to an assumed "Latin macho type of attitude" toward sex offenses "constituted a gross racial stereotype or anecdotal generalization which was clearly condemned in the *Batson* and *Hernandez* [*v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)] decisions"). To suggest that all southern males believe that pregnant females should not work wrongfully excludes a subgroup of one gender from participation in the judicial process and "reinforce[s] prejudicial views of the relative abilities of men and women." *J.E.B.,* 511 U.S. at 140, 114 S.Ct. 1419. We emphasize that counsel did not say

"southerners" are often prejudiced "against women working." Rather, counsel argued that southern *males* often feel this way. "Striking individual jurors on the assumption that they hold particular views simply because of their gender is 'practically a brand upon them, affixed by law, an assertion of their inferiority.'" *Id.* at 142, 114 S.Ct. 1419 (quoting *Strauder v. West Virginia,* 100 U.S. 303, 308, 25 L.Ed. 664 (1880)). If one cannot discriminate against males, it follows that one cannot discriminate against a geographical subgroup of males. *See generally State v. Sanderson,* 182 Ariz. 534, 540, 898 P.2d 483, 489 (1995) (considering an appeal in which the defendant presented a *prima facie* showing of discrimination on the combined bases of race and gender). *But see Turner v. Marshall,* 63 F.3d 807, 812 (9th Cir.1995) (limiting its examination to whether the defendant had made "a prima facie case of impermissible exclusion of African-American jurors as a class, with no reference to gender," because "neither the Supreme Court nor the Ninth Circuit has recognized that the combination of race and gender, such as 'black males,' may establish a cognizable group for *Batson* purposes"), *overruled on other grounds by Tolbert v. Page,* 182 F.3d 677 (9th Cir.1999) (en banc).

¶ 11 We find that counsel's non-neutral reason for striking the only African American panel member—that he was a southern male—tainted the entire jury proceedings, requiring reversal in this case. "Once a discriminatory reason has been uncovered—either inherent or pretextual—this reason taints" any other neutral reason for the strike. *Payton,* 495 S.E.2d at 210. Regardless of how many other nondiscriminatory factors are considered, any consideration of a discriminatory factor directly conflicts with the purpose of *Batson* and taints the entire jury selection process. *Id.; State v. Haigler,* 334 S.C. 623, 515 S.E.2d 88, 92 (1999) (applying the tainted approach while emphasizing that the non-neutral reason must be "fundamentally implausible or pretextual"); *McCray v. State,* 738 So.2d 911, 914 (Ala.Crim.App.1998) (applying the tainted approach and stating that "a race-neutral reason for a peremptory strike will not 'cancel out' a race-based reason"), *cert. denied* (1999); *Rector v. State,* 213 Ga.App. 450, 444 S.E.2d 862, 865 (1994) (accepting the tainted approach); *Moore v. State,* 811 S.W.2d 197, 200 (Tex.App.1991) ("Even though the prosecutor may have given one racially neutral explanation, the racially motivated explanation 'vitiates the legitimacy of the entire [jury selection] procedure.'" (quoting *Speaker v. State,* 740 S.W.2d 486, 489 (Tex.App.1987))) (alteration in original).

¶ 12 In contrast to our decision here, some courts have applied a "dual motivation" analysis to similar factual situations. Under the dual motivation approach, once the opponent of a strike has established a *prima facie* case of discrimination, the proponent of the strike has the opportunity to show that the strike would have been exercised even without the discriminatory motive. *See United States v. Tokars,* 95 F.3d 1520, 1533 (11th Cir.1996) (applying the dual motivation analysis to a *Batson* challenge and citing cases from the Second, Fourth, and Eighth Circuits that have done the same), *cert. denied,* 520 U.S. 1151, 117 S.Ct. 1328, 137 L.Ed.2d 489 (1997); *cf. State v. Hodge,* 248 Conn. 207, 726 A.2d 531, 544 (recognizing the dual motivation doctrine but refusing to apply this doctrine when counsel failed to raise a dual motivation claim at trial), *cert. denied,* 528 U.S. 969, 120 S.Ct. 409, 145 L.Ed.2d 319 (1999). We reject the dual motivation approach and adopt the tainted approach because we recognize that *Batson* protects against only the most conspicuous and egregious biases. "To excuse such obvious prejudice because the challenged party can also articulate nondiscriminatory reasons for the peremptory strike would erode what little protection *Batson* provides against discrimination in jury selection." *Payton,* 495 S.E.2d at 210.

¶ 13 For the foregoing reasons, we find that the State's impermissible gender- and/or race-motivated strike tainted any nondiscriminatory reasons it may have had. Accordingly, we reverse the defendant's convictions.

CONCURRING: NOEL FIDEL, Presiding Judge, RUDOLPH J. GERBER, Judge.