NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellant/Appellee*,

*v.*

RUBEN MURRIETTA, *Appellee/Appellant*.

Nos. 1 CA-CR 12-0460
1 CA-CR 12-0665
(Consolidated)
FILED 3-6-2014

Appeal from the Superior Court in Maricopa County
No. CR 2012-106250-001
The Honorable Carolyn K. Passamonte, Judge *Pro Tem*

**AFFIRMED AND REMANDED**

COUNSEL

Maricopa County Attorney's Office
By Karen Kemper
*Counsel for Appellant*

Maricopa County Public Defender's Office, Phoenix
By Terry Reid
*Counsel for Appellee/Cross-Appellant*

Arizona Attorney General's Office, Phoenix
By Andrew Reilly
*Counsel for Appellee on cross-appeal*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Lawrence F. Winthrop joined.

---

**J O N E S,** Judge:

¶1        These consolidated appeals arise from Ruben Murrietta's trial on two counts of aggravated assault and one count of resisting arrest. The State appeals the trial court's ruling declaring a mistrial on one of the aggravated assault counts. Murrietta appeals from his conviction and sentencing for resisting arrest. For reasons that follow, we affirm in both appeals and remand the aggravated assault count that was the subject of the mistrial to the trial court for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶2        Based upon information received from a citizen, a police officer entered a restaurant to contact Murrietta. Murrietta was not in the dining area, so the officer checked the men's restroom. After finding that restroom empty and hearing noises coming from the women's restroom, the officer knocked on the door to the women's restroom. In response to the knock, the door opened partway and the officer saw Murrietta peeking out. Upon recognizing the officer, Murrietta slammed the door closed, striking the officer in the right shoulder and face.

¶3        The officer forced his way into the restroom and grabbed Murrietta's left arm in order to handcuff him. Murrietta hit the officer in the mouth with his right elbow while struggling to avoid being handcuffed. The officer thereafter employed pepper spray in an attempt to control Murrietta, but it was only after back-up officers arrived and used a stun gun on Murrietta that the officers were able to take him into custody.

¶4        Murrietta was indicted on two counts of aggravated assault, each a class 5 felony (Counts 1 and 2), and one count of resisting arrest, a

class 6 felony (Count 3).[1] During jury selection, Murrietta challenged the State's use of a peremptory strike to remove a Black prospective juror from the venire panel. The trial court denied the challenge based upon a finding that Murrietta failed to make a prima facie showing of racial discrimination.

¶5        At the conclusion of trial, the court submitted the two counts of aggravated assault and one count of resisting arrest to the jury. During deliberations, the jury sent a note to the trial court that stated: "We have voted a guilty verdict by a 7 to 1 count on [Count 2]." After discussing the note with counsel off the record, the trial court announced that it was declaring a mistrial on Count 2. With counsels' agreement, the trial court prepared an impasse instruction for the jury, which initially directed the jury to continue their deliberations on Counts 1 and 3. After further discussion, however, the trial court and counsel agreed to give the instruction without reference to specific counts to avoid confusing the jury with the understanding that if the jury returned verdicts on all three counts, the trial court would accept verdicts only on Counts 1 and 3.

¶6        The trial court gave the impasse instruction as agreed upon by the parties and directed the jury to continue their deliberations. The jury thereafter returned guilty verdicts on Counts 2 and 3 and a not guilty verdict on Count 1. The trial court accepted the verdicts on Counts 1 and 3 and, in accordance with its previous ruling, declared a mistrial on Count 2. When the State asked why it was necessary to declare a mistrial on Count 2, the trial court stated: "I believe that the law is such that if they do tell us what their vote is on a particular count, and their vote was easily identified to this count, because it was so specific about the actions that were alleged in that count, that the Court could not consider then a second verdict from them." The State filed a motion for reconsideration on the declaration of mistrial, arguing that because the jury was able to reach a verdict on Count 2, there was no requirement that a mistrial be declared. Following the denial of the motion, the State timely appealed.

¶7        At the sentencing hearing for the conviction on Count 3, the parties agreed that in return for Murrietta admitting to four prior convictions the State would withdraw the allegation that the offense was committed while on release and stipulate to a presumptive 3.75-year

---

[1] Murrietta was also indicted on one count of shoplifting, a class 1 misdemeanor; however, on the first day of trial, the trial court granted the State's motion to dismiss this count.

prison term to run concurrent with a sentence to be imposed in another pending matter. The trial court sentenced Murrietta in accordance with the parties' agreement, and Murrietta timely appealed. On this Court's own motion, the two appeals were consolidated.

## DISCUSSION

I.    State's Appeal

**¶8**          Relying primarily upon *State v. Cruz*, 218 Ariz. 149, 181 P.3d 196 (2008), the State argues the trial court erred in *sua sponte* declaring a mistrial on Count 2 and requests that the guilty verdict returned by the jury on that count be reinstated. We review a trial court's decision to grant a mistrial for abuse of discretion. *State v. Givens*, 161 Ariz. 278, 279, 778 P.2d 643, 644 (App. 1989); *see Arizona v. Washington*, 434 U.S. 497, 510 (1978) ("The trial judge's decision to declare a mistrial when he considers the jury deadlocked is [ ] accorded great deference by a reviewing court.").

**¶9**          In *Cruz*, the defendant claimed the jury's verdict was coerced by the trial court directing the jury to continue their deliberations in response to a note from the jury that asked: "If one person's decision remains unchanged against the other 11 jurors [i]s this a hung jury? If so, what happens next?" 218 Ariz. at 166-67, ¶¶ 107-08, 181 P.3d at 213-14. In affirming the defendant's conviction and sentence, our supreme court determined that the trial court's instruction to continue deliberating did not improperly coerce or influence the jury. *Id.* at 167, ¶ 115, 181 P.3d at 214. The State contends this Court should likewise find that no coercion occurred in the present case and hold that there was no necessity for the declaration of mistrial.

**¶10**          The State's reliance on *Cruz* is misplaced. There is no issue of jury coercion in the present case. The issue is whether the trial court abused its discretion in declaring a mistrial on Count 2 after the jury reported it had "voted a guilty verdict by a 7 to 1 count." Based upon the jury's note, the trial court could reasonably conclude the jury was at an impasse on that count. Arizona Rule of Criminal Procedure 22.4 grants the trial court discretion to assist jurors at an impasse by way of additional instructions, as occurred in *Cruz*, but there is nothing in *Cruz* or elsewhere in the law that precludes the trial court from declaring a mistrial when the trial court reasonably believes the jury is deadlocked. *See Renico v. Lett*, 559 U.S. 766, 774 (2010) (noting "[a] mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict [has been] long considered the classic basis for a proper mistrial") (quoting *Washington*,

434 U.S. at 509); *Givens*, 161 Ariz. at 281, 778 P.2d at 646 (explaining "the mere availability of another alternative does not render a mistrial order an abuse of discretion").

¶11        The trial court's decision appears even more reasonable given the jury had reported its numerical division when it informed the trial court that it had reached a non-unanimous verdict.  In *Cruz*, our supreme court specifically warned about further instructions to a jury in such a situation due to the heightened risk of jury coercion.  218 Ariz. at 167, ¶ 114, 181 P.3d at 214.  Here, the trial court was cognizant of that risk and, as the trial court explained in its order denying the State's motion for reconsideration, believed that under the circumstances any additional instructions with respect to Count 2 would have "great potential" to influence the lone holdout juror.  We defer to the trial court's decision that further instructions would create a risk of coercion because the trial court is in the best position to determine whether a mistrial is required.  *Givens*, 161 Ariz. at 279, 778 P.2d at 644.

II.      Murrietta's Appeal

¶12        Murreitta argues the trial court erred by denying his *Batson*[2] challenge to the State's peremptory strike of the only Black prospective juror.  Murrietta contends the trial court should have required the State to provide a race-neutral reason to justify the strike.  When reviewing a ruling on a *Batson* challenge, we defer to the trial court's factual findings, but we review *de novo* the trial court's application of the law.  *State v. Lucas*, 199 Ariz. 366, 368, ¶ 6, 18 P.3d 160, 162 (App. 2001). We will not reverse a trial court's denial of a *Batson* challenge unless it is clearly erroneous.  *State v. Newell*, 212 Ariz. 389, 400, ¶ 52, 132 P.3d 833, 844 (2006).

¶13        Racially discriminatory use of a peremptory strike violates the Equal Protection Clause of the Fourteenth Amendment of the United State Constitution.  *Batson*, 476 U.S. at 89.  A *Batson* challenge is used to determine if a prohibited strike has been made and involves a three-step process: first, the opponent of the strike must make a prima facie showing of racial discrimination; second, if a *prima facie* showing is made, the striking party must articulate a facially race-neutral explanation for the strike; and third, if such an explanation is articulated, the opponent must show the facially-neutral explanation is merely a pretext for purposeful

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986)

discrimination. *Id.* at 93–94, 97-98; *State v. Murray*, 184 Ariz. 9, 24, 906 P.2d 542, 557 (1995) (citing *Purkett v. Elem*, 514 U.S. 765, 767 (1995)).

¶14          Here, the trial court denied Murrietta's *Batson* challenge at the first step based upon a finding that Murrietta failed to establish a *prima facie* case of discrimination.  To establish a *prima facie* case, a defendant must show facts and other relevant circumstances sufficient to raise an inference of purposeful discrimination. *Batson*, 476 U.S. at 96.

¶15          As argued below and re-urged on appeal, the sole basis for Murrietta's claim is that the prosecutor used a peremptory challenge to remove the only Black prospective juror from the venire panel.  In *State v. Johnson*, 183 Ariz. 623, 633, 905 P.2d 1002, 1012 (App. 1995), this Court recognized that "a *prima facie* case can be established by showing that the prosecutor used a peremptory challenge to remove the only person of the same ethnicity as the defendant."  Murrietta, however, is Hispanic, not Black.  Under these circumstances, the fact that the prosecutor struck the only Black prospective juror on the venire panel does not, in and of itself, establish a *prima facie* case of racial discrimination.  *See Crittenden v. Ayers*, 624 F.3d 943, 955-56 (9th Cir. 2010) (noting "'[t]he fact that the juror was the one Black member of the venire does not, in itself, raise an inference of discrimination' because 'it is not per se unconstitutional, without more, to strike one or more Blacks from the jury'") (quoting *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994)).  Furthermore, though we are unable to discern the racial makeup of the entire jury from the record, we note that other persons with Hispanic surnames remained on the jury.  "The presence of minority group members on the jury undermines an inference that the State exercised its strikes in a racially-discriminatory fashion."  *State v. Thompson*, 190 Ariz. 555, 557, 950 P.2d 1176, 1178 (App. 1997).

¶16          Murrietta contends a comparative examination of similarities in *voir dire* answers by the Black juror and other jurors who were seated supports his claim that the State's peremptory strike was exercised with discriminatory intent.  We decline to engage in such a comparative analysis because the alleged similarities were never presented to the trial court.  *State v. Medina*, 232 Ariz. 391, 405, ¶ 48, 306 P.3d 48, 62 (2013).  On this record, we cannot say the trial court clearly erred in ruling Murrietta failed to make the requisite *prima facie* showing of discriminatory intent to warrant an inquiry into the prosecutor's reasons for striking the Black prospective juror.

## CONCLUSION

¶17        For the foregoing reasons, we affirm Murrietta's conviction and sentence on Count 3 for resisting arrest.  We further remand the matter of the aggravated assault charge in Count 2 to the trial court for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
F I L E D : mjt