NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSHUA JAMES WOMBLE, *Appellant.*

No. 1 CA-CR 19-0340
FILED 7-21-2020

Appeal from the Superior Court in Coconino County
No. S0300CR201700886
The Honorable Mark R. Moran, Judge

**AFFIRMED**

COUNSEL

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge D. Steven Williams and Judge Randall M. Howe[1] joined.

_____

**B R O W N**, Judge:

¶1        Joshua Womble appeals his conviction and sentence for second-degree murder.  For the following reasons, we affirm.

**BACKGROUND**

¶2        The victim owned a house in Flagstaff, which he rented to Womble and three roommates.  Though there was no formal lease agreement, each roommate paid the victim $400 in cash for rent per month. If the rent was not paid on time, the victim would "come over to the house and yell at [them] about [their] rent money."  The victim was not happy when rent was late but was usually satisfied if payment was made soon thereafter.

¶3        In July 2017, the victim came to the house looking for the rent payments because Womble and one of the other roommates, Owen, were late.  Owen left the house to get cash from an ATM; on his way, he ran into Womble coming home from work.  Womble told Owen that if anything happened with the victim, Womble "would be ready for it."  When Womble arrived at the house, he and the victim had a heated conversation about the rent.  At some point, the victim chest bumped or shoved Womble.  During the ensuing altercation, Womble grabbed a pair of scissors from a nearby table.  When the victim started punching Womble and tried to choke him, Womble used the scissors to attack the victim.

¶4        As Owen returned with the cash, he saw Womble sprinting out the front door of the house.  Owen asked what happened, and Womble said he was defending himself and that the victim had swung at him first.

_____

[1]        Judge Randall M. Howe replaces the Honorable Kenton D. Jones, who was originally assigned to this panel.  Judge Howe has read the briefs and reviewed the record.

Then the victim ran out of the house holding up his shirt and yelled "he stabbed me." Before the police arrived, a different roommate placed a tray containing cocaine and cash, including a rolled-up one hundred dollar bill, under the bathroom sink.

¶5 Womble told police the victim's fists were clenched when he came at Womble but later said he felt like the victim hit him with a chair. Womble initially said he stabbed the victim once, and later stated it was twice. Womble received a wound to his hand that he thought was a result of his inadvertently stabbing himself with the scissors. When asked whether he had consumed any substances that day, Womble told police he had smoked marijuana earlier that morning, had a valid medical marijuana card, and denied taking anything else that day.

¶6 Ultimately, it was determined Womble had stabbed the victim in the chest, spleen, arm, and shoulder. The victim died from the wounds a short time later. A blood sample taken from Womble several hours after the incident revealed marijuana metabolites and benzoylecgonine ("BE"), an inactive metabolite of cocaine.

¶7 On October 6, 2017, the State charged Womble with one count of second-degree murder. At trial, Womble did not testify, but the jury was instructed on self-defense. Womble was found guilty of second-degree murder and later sentenced to 19 years in prison. This timely appeal followed.

**DISCUSSION**

**A. Evidence of Cocaine and Paraphernalia**

¶8 Before trial, Womble filed a motion to preclude the State from presenting evidence of "any drugs or paraphernalia located" in the house, presumably referring to, inter alia, the tray containing cocaine and cash. Womble contended that admitting the evidence would violate several rules, including Arizona Rules of Evidence ("Rule") 404, as impermissible evidence of a character trait. He asserted that allowing evidence about his "prior drug usage" or the paraphernalia "would only serve to depict [him] as a 'druggie' and cast a clouded shadow over the events that occurred." He also argued the evidence was irrelevant and unfairly prejudicial under Rule 403. Womble did not ask the court to preclude evidence of his blood test results.

¶9 In response, the State referenced Womble's blood test results, including the presence of BE. The State explained its intention to introduce,

at trial, many of Womble's statements made to police officers, and argued the statements were critical for the jury to weigh his "ability to see, hear, perceive or accurately recall events." The State also asserted that Womble's level of impairment by marijuana and cocaine was also relevant to understand his state of mind during the altercation with the victim.

¶10        The superior court denied the motion, finding evidence of Womble's drug use and drug paraphernalia could be relevant and admissible, and any unfair prejudice would be slight compared to its relevance under Rule 403. The court also reasoned that Womble's blood test results were relevant concerning his ability to see, hear, and comprehend the events leading to the victim's death, and indicative of his state of mind. The court concluded that the potential for unfair prejudice by admitting such evidence was "slight when compared to its relevance."

¶11        Womble argues that neither the blood test results showing the presence of BE nor the contents of the tray were relevant because they constituted impermissible "prior bad act evidence," presumably in violation of Rule 404(b). We review evidentiary rulings for an abuse of discretion. *State v. Jeffers*, 135 Ariz. 404, 417 (1983). Because Womble did not object to introduction of the BE evidence, we review for fundamental error resulting in prejudice. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

¶12        Under Rule 404(b), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This list is not exhaustive. *Jeffers*, 135 Ariz. at 417. "[I]f evidence is relevant for any purpose other than that of showing the defendant's criminal propensities, it is admissible even though it refers to his prior bad acts." *Id.* (citations omitted). The evidence should be excluded if the probative value of the disputed evidence is outweighed by the danger of unfair prejudice. *Id.*

¶13        Although it is not possible to know exactly when Womble ingested the cocaine, the evidence shows he may have misled the police officer when questioned about use of substances earlier in the day. "'Evidence which tests, sustains, or impeaches the credibility or character of a witness is generally admissible,' even if it refers to a defendant's prior bad acts." *State v. Williams*, 183 Ariz. 368, 376 (1995) (citation omitted). Womble asserts the BE evidence was not relevant because ingestion may have occurred up to 18 hours prior to his blood being drawn. But evidence

is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Ariz. R. Evid. 401(a). The evidence of BE shows it is more likely Womble was not entirely truthful when questioned by police, which called into question his credibility. *See* Ariz. R. Evid. 404(b). Womble argues that even if that evidence was minimally relevant, the prejudicial effect outweighs the probative value under Rule 403. We agree with the superior court's finding that the prejudicial effect did not outweigh its relevance. *See State v. Walton*, 159 Ariz. 571, 581 (1989) ("A witness'[s] ability to perceive or recall critical facts is highly relevant to his credibility."). Thus, we find no error, much less fundamental error.

¶14        The court erred, however, in admitting evidence of the cocaine and paraphernalia found on the tray because the State did not present evidence that Womble had any connection with the tray material. But the error is not reversible if we determine it was harmless. *State v. Leteve*, 237 Ariz. 516, 524, ¶ 25 (2015). To find harmless error, we must be persuaded that the State has met its burden of establishing, "beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *State v. Anthony*, 218 Ariz. 439, 446, ¶ 39 (2008) (quoting *State v. Bible*, 175 Ariz. 549, 588 (1993)). We conclude that burden has been satisfied here. The jury was properly made aware that Womble had consumed cocaine before the murder, which challenged the credibility of his statements to police. Unlike that evidence, the tray material did not undermine Womble's credibility and thus it did not contribute to or affect the jury's verdict. *See id*.

## B.    Denial of *Batson* Challenge

¶15        During voir dire, Womble raised a *Batson* challenge after the only Hispanic individual on the jury panel was struck. Womble argues the superior court erred because the State's reasoning was pretextual and the court's statement that there were no other similarly situated jurors who were treated differently by the State was incorrect. We review the court's decision regarding the State's motives for a peremptory strike for clear error. *State v. Hardy*, 230 Ariz. 281, 285, ¶ 11 (2012).

¶16        The Equal Protection Clause of the Fourteenth Amendment prevents the prosecution from striking prospective jurors based solely upon race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). "A *Batson* challenge involves three steps: (1) [t]he defendant must make a prima facie showing of discrimination, (2) the prosecutor must offer a race-neutral reason for each strike, and (3) the trial court must determine whether the challenger proved purposeful racial discrimination." *Hardy*, 230 Ariz. at 285, ¶ 12. During the

third step, the superior court evaluates the persuasiveness of the State's explanation, *State v. Harris*, 184 Ariz. 617, 619 (App. 1995), including "the striking party's credibility, considering the demeanor of the striking attorney and the excluded juror to determine whether the race-neutral rationale is a pretext for discrimination," *Hardy*, 230 Ariz. at 285, ¶ 12 (citing *Snyder v. Louisiana,* 552 U.S. 472, 477 (2008)).

**¶17**        Womble made a prima facie showing of discrimination because juror 8 was the only Hispanic juror.  *See id*.  The superior court found the second step of the *Batson* challenge was satisfied by offering a facially race-neutral explanation for the strike, that is, juror 8 had children close in age to Womble (age 21 when the offense was committed), and might sympathize with him, and there was little information about her except that she was a medical assistant in Phoenix.  *See State v. Garcia*, 224 Ariz. 1, 10, ¶ 26 (2010).  The court denied Womble's *Batson* challenge.

**¶18**        The race-neutral explanation need not be "persuasive, or even plausible." *State v. Newell*, 212 Ariz. 389, 401, ¶ 54 (2006) (quoting *Purkett v. Elem,* 514 U.S. 765, 768 (1995)).  There were other jurors with children older than Womble who were not stricken, but this does not take away from the State's "plausible" reason for striking juror 8.  *See State v. Bustamante*, 229 Ariz. 256, 261, ¶ 16 (App. 2012) (finding no *Batson* error where a juror was struck for having "some language issues" and because she was a teacher and worked with children); *State v. Garcia*, 224 Ariz. 1, 10, ¶¶ 20–27 (2010) (finding no *Batson* error where a juror was struck because she had a Hispanic surname and had difficulty reading English).  Thus, we need not address whether lack of information about juror 8's background would qualify here as a race-neutral explanation.

**¶19**        Womble argues the State's explanation was pretextual because there were other jurors with children around Womble's age who were not stricken.  But Womble has waived this argument, having raised it for the first time on appeal. *See State v. Medina*, 232 Ariz. 391, 404–05, ¶ 48 (2013) (declining to engage in a comparative juror analysis "when the similarities between peremptorily stricken jurors and those remaining on the panel were not raised at trial").

**CONCLUSION**

¶20        We affirm Womble's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:    AA