NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSE LEONARDO GILL ARMENTA, *Appellant.*

No. 1 CA-CR 20-0050
FILED 3-2-2021

Appeal from the Superior Court in Maricopa County
No. CR2014-148453-001
The Honorable Joseph P. Mikitish, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian Coffman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Robert W. Doyle
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Chief Judge Peter B. Swann joined.

---

**C A T T A N I**, Judge:

¶1        Jose Leonardo Gill Armenta appeals his convictions and sentences for sexual abuse, sexual conduct with a minor, and attempt to commit molestation of a child.  He argues the superior court erred by allowing the State to use peremptory challenges to strike two Hispanic prospective jurors from the jury panel.  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In January 2014, 28-year-old Armenta took J.M., and J.M.'s 14-year-old sister, Y.M., to run errands.  They eventually went to a park, where Armenta digitally penetrated Y.M.'s vagina, fondled her breasts, and tried to make her touch his penis.  The State charged Armenta with sexual abuse, sexual conduct with a minor, and attempt to commit molestation of a child.

¶3        Jury selection took place in August 2016.  The State and defense counsel stipulated to each waive one peremptory strike, bringing each side's total number of strikes to five.  Before the jury was empaneled, Armenta raised a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the State's peremptory strikes of Juror 43 and Juror 83.  Armenta argued that both jurors were "Mexican American Latino jurors and the State somehow found [the] need to strike two out of the few that were left."  After the State provided a reason for both strikes—one had a family criminal history, the other had a job as an aerospace engineer—the court allowed the strikes to stand, ruling, "[i]t doesn't have to be the best decision, just has to be race neutral."

¶4        The court empaneled 14 jurors.  After a six-day trial, Armenta was found guilty on all three counts.  The court sentenced him to a mitigated term of 17 years' imprisonment followed by lifetime probation.

¶5        The superior court granted Armenta leave to file a delayed appeal under Rule 32.1(f).  We have jurisdiction under A.R.S. § 13-4033(A).

**DISCUSSION**

**¶6**        Armenta challenges (1) the sufficiency of the superior court's *Batson* findings under *State v. Porter*, 248 Ariz. 392, 399, ¶ 20 (App. 2020), *review granted* (Nov. 3, 2020); and (2) the denial of his *Batson* challenges to the State's peremptory strikes of prospective jurors 43 and 83.

**I.        Express Findings Under *Porter*.**

**¶7**        Armenta argues, based on *Porter*, that the superior court failed to make required findings on the record as to the State's race-neutral reasons for striking jurors. In *Porter*, this court held that when the superior court is confronted with a pattern of strikes against minority jurors that includes a demeanor-based explanation for a strike, the court must determine expressly that the racially disproportionate impact of the pattern is justified by genuine, not pretextual, race-neutral reasons. *Id.* at 399, ¶¶ 20, 21. This court further noted, however, that the superior court need not make detailed findings addressing all the evidence before it in every case, and at times may even conduct the entire analysis implicitly. *Id.* at 397, ¶ 16 (citing *Miller-El v. Cockrell*, 537 U.S. 322, 347 (2003)); *State v. Canez*, 202 Ariz. 133, 147, ¶ 28 (2002).

**¶8**        Neither of the two strikes that Armenta challenges were demeanor-based so as to give rise to *Porter*'s express findings requirement. 248 Ariz. at 399, ¶ 20. The race-neutral reasons the State provided for striking the jurors—one for a family history of crime, the other for employment—do not implicate the concern underlying *Porter*'s call for express findings and, as such, are appropriate subjects for implicit findings. *See Canez*, 202 Ariz. at 147, ¶ 28. Moreover, the record before us does not evidence a pattern of race-based strikes. Armenta only challenges two of the State's five strikes. Armenta does not dispute that some Hispanic jurors remained on the panel, as indicated by his counsel's statements that "a few" potential Hispanic jurors "were left." The record thus shows the State did not use additional available strikes to remove potential Hispanic jurors from the jury. Under the circumstances presented, the superior court's *Batson* findings are adequate for our review.

**II.        *Batson* Challenges.**

**¶9**        Under the 14th Amendment's Equal Protection Clause, the State may not strike prospective jurors for solely racial reasons. *Batson*, 476 U.S. at 89. *Batson* challenges invoke a three-step analytical framework. *State v. Medina*, 232 Ariz. 391, 404, ¶ 44 (2013). First, the opponent of the strike must state a prima facie case of racial discrimination. *Id.*; *see also Purkett v.*

*Elem*, 514 U.S. 765, 767 (1995). Then, the burden of production shifts to the proponent to present a race-neutral explanation for the strike. *Purkett*, 514 U.S. at 767. Finally, the court decides whether purposeful racial discrimination has been proven. *Id.*

¶10 The party challenging the strike has the burden of showing that the race-neutral explanation is merely a pretext. *State v. Gay*, 214 Ariz. 214, 220, ¶ 17 (App. 2007). "This third step is fact intensive and will turn on issues of credibility, which the trial court is in a better position to assess than is this Court." *State v. Newell*, 212 Ariz. 389, 401, ¶ 54 (2006). When reviewing the superior court's ruling on a *Batson* challenge, we defer to its factual findings unless clearly erroneous. *Id.* at 400, ¶ 52; *State v. Lucas*, 199 Ariz. 366, 368, ¶ 6 (App. 2001).

### A.     Juror 43.

¶11 Armenta's counsel first objected to the State's strike of Juror 43, pointing out that "there were very minimal[,] very few Hispanics on the panel. The State has decided to strike one of the remaining female Hispanics left on the panel . . . Number 43 said she could be fair[,] impartial." The court found this was a "prima facie showing," so the State provided its reason for striking Juror 43:

> Juror 43 reported a family history that included molestation, domestic violence, homicide. She herself had been a victim or is related to other victims and perpetrators of crimes. She had indicated that she was mostly and tangentially related to most of these individuals . . . [C]onsidering the number of these individuals in her family who she knows that were either victims or perpetrators of crimes in the aggregate[,] that experience renders her inappropriate for this jury.

The court denied Armenta's *Batson* challenge, stating that "the State has shown a race neutral provision."

¶12 For the first time on appeal, Armenta undertakes a comparative analysis of the jury and lists four other jurors who also had family members who were victims or perpetrators of crimes, who nonetheless were empaneled as jurors. For example, Armenta compares empaneled Juror 16, whose brother was a homicide victim ("a closer relative and more recent in time"), to stricken Juror 43, whose husband's grandfather was a homicide victim. He likewise compares empaneled Juror 29's close friend, who was arrested for a domestic dispute, with stricken Juror 43's husband, who had a domestic violence charge dropped.

¶13            A comparative analysis of juror qualities must be presented to the superior court, and we will not undertake a more thorough analysis than that made by the superior court. *Medina*, 232 Ariz. at 405, ¶ 49; *see also Snyder v. Louisiana*, 552 U.S. 472, 483 (2008) ("[A] retrospective comparison of jurors based on a cold appellate record may be very misleading when alleged similarities were not raised at trial."). Accordingly, Armenta's comparative analysis claim fails.

¶14            Armenta's additional arguments regarding Juror 43 are similarly unavailing. Personal or familial involvement with the criminal justice system has been recognized as a potentially nondiscriminatory basis for a juror strike. *State v. Gallardo*, 225 Ariz. 560, 565, ¶¶ 12–13 (2010); *State v. Reyes*, 163 Ariz. 488, 490–91 (App. 1989); *see also United States v. Johnson*, 54 F.3d 1150, 1163 (4th Cir. 1995) (prospective juror's husband "had been involved in criminal activity"); *United States v. Jackson*, 914 F.2d 1050, 1052–53 (8th Cir. 1990) (prospective juror's nephew was incarcerated). Moreover, "[a]s long as it is not based upon race, perceived sympathy on the part of a prospective juror toward a defendant is a legitimate basis for a peremptory strike." *State v. Hernandez*, 170 Ariz. 301, 305–06 (App. 1991) (citation omitted).

¶15            The record shows Juror 43 had extensive personal and familial involvement with the criminal justice system, both as a victim and as someone with family members who had been convicted of criminal offenses. In the aggregate, these contacts provide a plausible race-neutral reason to justify a strike. *Gallardo*, 225 Ariz. at 565, ¶¶ 12–13. Although Juror 43 answered "no" each time the court asked her if anything about those experiences would prevent her from being fair and impartial, her responses arguably created a concern about her ability to remain impartial. Since it was not based on race, Juror 43's personal and familial involvement with the criminal justice system was a legitimate basis for a peremptory strike. *See Hernandez*, 170 Ariz. at 305–06. On this record, the superior court did not abuse its discretion by finding that Armenta failed to prove discrimination in the State's strike of Juror 43. *Newell*, 212 Ariz. at 401, ¶ 54.

### B.        Juror 83.

¶16            In objecting to the State's strike of Juror 83, Armenta's counsel again expressed "we have very few Mexican American Latino jurors and the State somehow found [the] need to strike two out of the few that were left." The superior court did not make a finding on the record that Armenta satisfied the first step of *Batson*, but we presume it did so because the State provided an explanation for the strike. *See id.* ("The first step of the *Batson*

analysis is complete when the trial court requests an explanation for the peremptory strike."). The State explained:

> Juror number 83 is an aerospace engineer, said inspector, but I believe that that is an engineering background[,] 28 years. In cases such as these where there's no technical or physical evidence like DNA and the only evidence is testimony the State feels that a juror with this technical background is not appropriate.

Armenta's counsel responded that "the State's argument for [Juror 83] is that he's an engineer and may be too technical[,] too smart to be on the panel . . . I don't know that that's a legally sufficient reason." The court nevertheless found that in light of "the nature of evidence here in this particular case," the explanation was race neutral and "more than just a façade." The court noted that the basis for the strike "doesn't have to be the best decision, just has to be race neutral."

¶17        On appeal, Armenta lists seven other jurors who served on the final panel who "held positions or were in occupations that would be heavily involved with sophisticated technology," including an empaneled juror who worked in manufacturing at Honeywell. Armenta also recounts that the prosecutor asked the venire if they expected the State to present physical evidence, and although several jurors raised their cards, Juror 83 was not one of them.

¶18        Again, Armenta failed to raise a comparative juror analysis claim in the superior court, and we do not consider such an argument unless first raised below. *Medina*, 232 Ariz. at 405, ¶ 49. Thus, Armenta's comparative analysis argument fails.

¶19        Armenta further argues that the State's explanation was necessarily pretextual. "[I]mplausible or fantastic justifications may (and probably will) be found to be pretext[ual]." *Newell*, 212 Ariz. at 400, ¶ 54 (quoting *Purkett*, 514 U.S. at 768). But this court has held that work history and education can serve as an appropriate race-neutral reason for a juror strike. *See State v. Sanderson*, 182 Ariz. 534, 540 (App. 1995) (explaining that "[p]rospective jurors' age, marital status and lack of employment have been identified as non-discriminatory reasons supporting the exercise of peremptory strikes").

¶20        Here, the State's justification for striking Juror 83 was his technical background and employment history. The State identified Juror 83's job—aerospace engineer or inspector—and elaborated that he was

struck because the case lacked the technical evidence that an engineer would likely expect. This type of justification has been affirmed by this court. *See State v. Rodarte*, 173 Ariz. 331, 334–35 (App. 1992) (finding no *Batson* violation in a strike based on lack of employment). And the superior court found the prosecutor's reasoning to be race neutral and "more than just a façade." We presume this holding was based on the State's responses and the superior court's evaluation of credibility factors, including "the prosecutor's demeanor; . . . how reasonable, or how improbable, the explanations are; and . . . whether the proffered rationale has some basis in accepted trial strategy." *Miller-El*, 537 U.S. at 339. Although other jurors had technical backgrounds, as Armenta argues for the first time on appeal, there were no other engineers, and it was not necessarily implausible to assume an engineer would expect technical or scientific evidence. *See Newell*, 212 Ariz. at 400, ¶ 54. The fact that Juror 83 did not raise his card to indicate he expected the State to present physical evidence, although important, is not dispositive. On the whole and in light of the deference we give the superior court, the court did not abuse its discretion by finding that Armenta failed to meet his burden of proving discrimination in the State's strike of Juror 83.

## CONCLUSION

**¶21** For the foregoing reasons, we affirm Armenta's convictions and sentences.

